Good morning, Your Honors. May it please the Court, Christy Hughes on behalf of Mr. Infante-Caballero. Your Honors, I initially raised the constitutional challenge to the supervised release issue to preserve, as I said, for en banc or Supreme Court review. But then the Supreme Court decided And there's a lot of support in Haymond for the constitutional challenge. And I think the broad language in Haymond is inconsistent with prior opinions on this issue. For instance, the plurality says that we can't send a free man back to prison for years based on judge-bound facts. The plurality says only a jury acting on proof beyond a reasonable doubt may take a person's liberty. And they say the Constitution requires any accusation triggering a new and additional punishment has to be proven to the satisfaction of a jury beyond a reasonable doubt. But in Haymond, the Court was addressing a different statute that provided for a mandatory minimum term of imprisonment if a person had been convicted of certain crimes and then was alleged to have violated certain conditions. And that particular statute allowed for a sentence that exceeded the statutory maximum for the underlying offense. Isn't that correct? Yes, Your Honor. And so that's where the Apprende issues became problematic in the plurality's view, in that the judge was exceeding the statutory maximum for the underlying conviction, not a jury. A jury wasn't finding that. Isn't that correct? That is, Your Honor. And that's not what happened here under this statute. And in fact, the plurality in Haymond acknowledges probably six, seven, eight times the differences between the two types of revocation and revocation sentencing in those statutes, doesn't it? It does, Your Honor. And so in this case, assuming this question is even right because it seems to rely on future issues that may not occur, he violates and is revoked, even if he were sentenced to an additional three years of imprisonment, that would be well within the 20-year statutory maximum, wouldn't it? It would, Your Honor. So the judge would not be exceeding the statutory maximum by making findings on a preponderance rather than having a jury do it beyond a reasonable doubt. Isn't that correct? I'm sorry. Can Your Honor repeat the question? So your argument that his constitutional problem would be that you have a judge making a finding based on a preponderance of the evidence rather than a jury making a finding beyond a reasonable doubt. But here, that is not exceeding the statutory maximum. It's within the range. And Haymond said that it did not change Jones, which says that supervised release is part of the initial sentence. Correct, but one of the points that the plurality makes in Haymond is that we can't – that a revocation proceeding remains part of the criminal proceeding. For that point, Your Honor, it's part of the original sentence. And so it sort of chastises the government for saying that the Sixth Amendment doesn't necessarily apply. It says we can't relabel parts of the criminal proceeding like a revocation proceeding and thereby dodge, it says, the Sixth Amendment. And I think, for instance, that reasoning there is inconsistent with prior opinions. But the plurality essentially calls out the dissent and says that the dissent is basically crying wolf over this because this decision in Haymond is going to have so little effect. It will apply in so few cases where the different revocation statute applies and applies for the mandatory minimum. So it seems that the plurality recognized the general revocation sentencing statute and didn't seem to have a Sixth Amendment problem with it. I think it does. And, however, the plurality leaves in this very broad language, despite the dissent pointing it out several times. You know, it doesn't include narrowing language about statutory maximum. It says any additional punishment. I mean, it leaves in this very broad language, and I think that reasoning is inconsistent with prior opinions. And I think if we sort of step back and just look at the way supervised release operates and just kind of look at it from a fairness standpoint, this operates very much like a criminal proceeding. There's a charging document in the OSC. There's an accusation that the defendant has committed some sort of violation. He's entitled to some sort of due process rights to have a hearing. A judge finds whether he committed this violation, and then he's sent back to prison. And in some cases, like for Mr. Infante Caballero, he could be sent to prison for three years for the violation when he only served 30 months for the underlying criminal offense. So I think the effect of supervised release is that it really functions, at least for the defendant, like a new criminal proceeding. And I think if we look at that from sort of a fairness standpoint, and then we look at the very broad language and the reasoning from the plurality's decision that we do not send people that are out of custody back to jail without a jury making those findings, I think that But the plurality decision doesn't say that. It says we don't do that when it increases the punishment, when it goes beyond what was the statutory maximum from the underlying conviction, which is not the case here. And I noted that you argued repeatedly through your briefs that the plea agreement only authorized a 30-month sentence. But he pled without – excuse me, there was no plea agreement. He pled straight up. He didn't have a plea agreement. And so when he did that, he could have been sentenced to the statutory maximum. Isn't that correct? He could have, Your Honor. Right. So there was no limit that he could only ever receive 30 months because that happened to be what the district judge imposed. That's correct. And I think my point – I wasn't clear, but I think my point on this is, while, yes, that is the explicit holding of the plurality that it's tied to the statutory maximum, there are several places, which I've quoted in the brief, where the plurality does not cabinet to the statutory maximum. They say several places, additional punishment with no limitation. And that's the broad reasoning that I think is irreconcilable with prior opinions on this issue. Why isn't your argument just all premature? Well, I think as this court and the Supreme Court has recognized, supervised release is a component of the sentence. And so he is – But he's yet to been – he hasn't been revoked or he hasn't been charged with violating supervised release or anything. Well, this isn't like, Your Honor, those cases where we're claiming that his ultimate sentence would be above the statutory maximum because it's dependent. Pardon? I understand. So I think it's a little bit different. Your argument is premature. I think it's a little bit different in that there's no facts to be found here. We know what is going to happen, and we know that this component, as it stands now – So we know that he's going to violate. Pardon? We know that the special condition that if he is removed from the United States that this particular condition wouldn't apply. We know those things are going to happen. We don't know that, but we know how any revocation is going to operate. We know that a jury is not going to find these facts. We know that he's not going to have a beyond a reasonable doubt standard. We know those things. So how is this different from Linares? I think because it's not dependent on the ultimate sentence that he receives. There's no – it's not dependent on any fact that we need to find later. But that's not what Linares turned on. It didn't turn on whether the – in fact, the Court didn't get to that issue. The Court said it wasn't right before even getting to the argument about whether the revocation sentence would exceed what was authorized by the statute. It just said it isn't right because we're talking about prospective future events that may or may not occur, which seems to be exactly what we're talking about here. I think the difference with Linares is he only had an argument to raise if he got a revocation sentence that was long enough to put him over the statutory maximum. We had to know what that ultimate – what that revocation sentence was. Here, we don't have to know which sentence he's going to receive. We already know there's going to be no jury. But we don't know that he's even going to violate. I mean, here, we don't know that he's going to violate. And what you're saying is just assume that he does violate in the future, then there's going to be a constitutional problem. It seems to pose a pretty classic ripeness problem. Well, I think it's not assume that he's going to violate in the future, but it's that we know that he is currently subject to this scheme that doesn't have a jury and makes findings on a preponderance by a judge. But that's different. I know you cited Williams. But Williams talked about a condition that had been imposed. This isn't a condition that's imposed that you're complaining about. You're complaining about the procedures that could occur at a possible future revocation. Well, it's an entire scheme. It's an entire set of conditions that are imposed. And the way this scheme is governed is a judge makes these preponderance findings. Okay. Do you want to save some time for everybody? Yes, Your Honor. Thank you. Okay. Thank you. Good morning again. Zach Howe on behalf of the United States. This constitutional claim is unripe under the Linares and Montenegro-Rojo decisions. The Linares decision did turn on what it said was potential revocation of supervised release. At page 9 of the opening brief, the explanation for why there's a constitutional problem here is because Infante could spend more time in custody if a judge finds him in violation of supervised release. It's the same claim that this Court found unripe. There's also no merit to the constitutional question under this Court's Huerta-Pimentel case and its progeny. The Heyman decision didn't change that. It expressly reserved this question at footnote 7 of the brief, but the commentary that it did give on this supervised release provision suggested that this Court got it right in Huerta-Pimentel. The Court said that there was, quote, critical differences between this provision and 3583K, the one that the Court struck down. The Breyer concurrence also says that those differences existed. So you have five justices who, to the extent they did address this question, agreed with this Court's Huerta-Pimentel decision. And then just briefly on the imposition of supervised release, the District Court at page 17 of the record properly adopted the government's and the PSR's rationale for imposing supervised release, which was a deterrence rationale. That is the express rationale that Guidelines Commentary Note 5 at 5D1.1 says that you should rely on if you're going to impose supervised release on a deportable alien. So under this Court's Daniels decision, under the Carty decision, the en banc decision, that was appropriate for imposing that supervised release. If there were no other questions, I would ask that this Court affirm, and I'm happy to yield my time. Okay, thank you. Thank you. Thank you. If I could just address the second argument that counsel just raised about the imposition of supervised release contrary to 5D1.1. Counsel said that the District Court expressly adopted the deterrence rationale. It's not actually clear which the Court embraced, the probation officer and the prosecutor's arguments, but it's not clear which rationale the District Court was embracing, and either rationale, I think, still fails. The government was talking about just the fact that Mr. Infante had returned to the United States after previous deportations. That's not specific to Mr. Infante Caballero. That's anyone convicted of 1326, so that's not a particularized explanation. And probation was talking about deterring just crimes in general, any future crimes, which if this Court looks to Valdivinos Flores and Alvarez Alvarado, the Fifth Circuit case that Valdivinos relies on, they both are explicitly talking about deterring future illegal reentries, not just deterring future crimes in general. So I think relying on either deterrence rationale is insufficient. Thank you, Your Honors. Okay, thank you. We appreciate your arguments and the matters submitted at this time.
judges: Kelly, Paez, Bade